# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| COREY L. MCCALLUM, et al. | § | |
| | § | |
| V. | § | A-07-CA-1000 AWA |
| | § | |
| WELLS FARGO BANK, N.A. | § | |

## ORDER

Before the Court are Defendant's Motion for Summary Judgment, filed August 16, 2009 (Clerk's Doc. No. 35); Plaintiffs' Response to Defendant's Motion for Summary Judgment and Submission of Opposing Summary Judgment Evidence, filed September 17, 2009 (Clerk's Doc. No. 40); and Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment, filed September 22, 2009 (Clerk's Doc. No. 42).

## I. BACKGROUND

Briefly, the facts giving rise to this case are as follows. In July of 2003, Plaintiffs Corey and Marsha McCallum ("the McCallums") took out a home equity loan with First Franklin Financial Corporation, who later assigned the Note and Security Instrument to Wells Fargo Bank, N.A. ("Wells Fargo"). The McCallums believe this extension of credit did not comply with the lender obligations pf those portions of the Texas Constitution controlling home equity lending practices. Specifically, the McCallums allege that (1) they were charged closing and related costs in an amount that exceeded three percent of the loan principal, and (2) Wells Fargo structured the repayment of this extension of credit in violation of the requirement for repayment on terms of "substantially equal monthly installments." *See* TEX. CONST. art. XVI, §§ 50(a)(6)(E) and (L).

The McCallums now seek a declaratory judgment declaring that the extension of credit violated these two provisions of the Texas Constitution. Further, if the Court finds that these

provisions were indeed violated, the McCallums assert that they will be entitled to a declaration that Wells Fargo forfeits all principal and interest under the extension of credit.

Wells Fargo believes that summary judgment should be granted as to both of these claims. In support, Wells Fargo argues that (1) the home equity loan did not violate the three percent rule because a portion of the fees were actually paid by the lender rather than the McCallums, and (2) adjustable rate home equity loans are permitted under the Texas Constitution, and Plaintiffs' argument to the contrary has already been rejected by another court in the Western District of Texas in *Cerda vs. 2004-EQR1, LLC, et al.*

## II. ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Commerce and Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, courts must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Furthermore, courts "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The nonmovant may not rely on mere allegations in the pleadings. *Id*. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by the Court. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.  Invalidity for Excessive Fees**

Article XVI, section 50(a)(6)(E) of the Texas Constitution provides that a home equity loan is valid only if it:

> does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit[.]

3

TEX. CONST. art. XVI, § 50(a)(6)(E). In other words, section 50(a)(6)(E) limits fees, not interest, "'necessary to originate, evaluate, maintain, record, insure, or service the extension of credit' to three percent of the amount of the loan." *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 709 (Tex. App.—Waco 2002, no pet.) (quoting TEX. CONST. art. XVI § 50(a) (6)(E)).

The original principal amount of the loan at issue was $105,000. Three percent of the loan therefore equals $3,150. According to the complaint, the McCallums allege that they were required to pay a total of $4,618, which obviously exceeds $3,150. However, Wells Fargo shows that the fees used in the McCallums' calculations includes $1,931.90 that were paid by the lender, First Franklin. *See* Defendant's Motion for Summary Judgment, at Exhibit 3, line 205 ("CREDIT FROM LENDER FOR CLOSING COSTS 1,931.90"). Because these fees were not paid by the McCallums, they are not used in calculating whether the total fees exceeded the three percent cap.[1] *See Tarver*, 69 S.W.3d at 710 (noting how lender had absorbed excess fees as a credit to comply with three percent cap). Taking $1,931.90 out of the equation, the McCallums were actually required to pay $2686.10, which is less than three percent of the loan.

In response, the McCallums argue that there were additional fees besides those listed in the complaint that would bring the total above the three percent threshold.[2] These additional fees include amounts allegedly paid outside of closing by the McCallums, as well as a loan discount

---

[1] While Plaintiffs spend some time arguing about Wells Fargo's initial litigation position, Plaintiffs do not contend that the $1,931.90 can be counted if Plaintiffs were given a credit for this amount, nor do they argue that they were not given a credit for this amount.

[2] Plaintiffs assert that they intentionally excluded certain costs from the aggregate shown, but they also reserved the right to assert that they be included should it become necessary to show charges in excess of three percent.

4

charge[3] collected by Wells Fargo. According to the McCallums, if these other fees are included, the fees would continue to exceed the three percent of loan principal maximum allowed under the Texas Constitution.

In regard to the amounts allegedly paid outside of closing by the McCallums, the McCallums offer nothing to substantiate this claim. All the McCallums offer is an affidavit of Corey McCallum that says he paid some additional amount *at* closing, but that he does "not remember the exact amount of the payment made." McCallum Aff. at ¶ 3. He further asserts that he would be able to find documentation of the payment if given time to do so, and that he would supplement the affidavit at some later time. *Id.* at ¶ 3–4 . However, this case was filed in 2007, and is scheduled to go to trial on October 5, 2009; thus, the McCallums must respond to Wells Fargo's summary judgment motion now. The McCallums were already given an extra 17 days to file their response, and yet they still did not submit any evidence that shows what additional amounts, if any, were paid outside of closing that could bring the total fees over three percent.

In regard to the loan discount charge, this is interest, not a fee, such that it is not subject to the three-percent limitation. *See Tarver*, 69 S.W.3d at 712; *Pelt*, 2002 WL 31006139, at *4; *Marketic*, 436 F. Supp. 2d at 847. The McCallums do not articulate any reason why this discount charge should be treated any differently than it was in *Tarver*, *Pelt*, or *Marketic*. Therefore, this

---

[3]In the complaint, Plaintiffs specifically reference the "loan discount" in the amount of $3,150.00 described on line 802 of the HUD-1. *See* Pl. Complaint, at n2. Plaintiffs then state, "Whether 'points' (also known as a 'loan discount') are considered to be a fee for the purpose of TEX. CONST. art. XVI, § 50(a)(6)(E) is [a] question of first impression." *Id.* However, in *Tarver*, the court specifically held that loan discount points are a form of "interest" and are not subject to the three-percent limitation. 69 S.W.3d at 712. *See also Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 847 (N.D. Tex. 2006); *Pelt v. U.S. Bank Trust Nat. Ass'n*, No. Civ.A.3:00-CV-1093-L, 2002 WL 31006139, at *4 (N.D. Tex. Sept. 5, 2002). Therefore, this is not an issue of first impression—a loan discount is not a fee for the purpose of TEX. CONST. art. XVI, § 50(a)(6)(E).

charge does not apply when calculating whether closing fees exceeded three percent of the amount of the loan. *See id.*

Because the evidence shows that the McCallums were only required to pay $2686.10 for closing and related costs, Wells Fargo is entitled to summary judgment on the McCallums' claim that they were required to pay an amount that exceeded three percent of the loan principal in violation of article XVI, section 50(a)(6)(E) of the Texas Constitution.

C.      **Whether the loan violates Article 16, § 50(a)(6)(L) of the Texas Constitution?**

In regard to the McCallums' claim that Wells Fargo structured repayment of the loan in violation of the requirement for repayment on terms of "substantially equal monthly installments," Wells Fargo first offers a myriad of authority showing that variable rate loans are permissible under the Texas Constitution. Wells Fargo then points out that another court in the Western District of Texas, faced with similar facts, recently held that a variable rate home equity loan that changes the scheduled payments based on periodic interest rate changes did not violate § 50(a)(6)(L). *See Cerda, et al. v. 2004-EQRI, LLC, et al.*, No. SA-07-CV-632-XR, at 5–12 (attached at Section M to Defendant's Motion for Summary Judgment).

Just as the McCallums argue in this case, the Plaintiffs in *Cerda* alleged that their variable rate home equity loan violated Article XVI, section 50(a)(6)(L) of the Texas Constitution because it was not scheduled to be repaid in "substantially equal successive payments." After a thorough analysis, the court in *Cerda* rendered summary judgment in favor of Defendants on this issue, holding that the subject variable rate home equity loan did not violate section 50(a)(6)(L). *Id.*

> After considering the language of § 50(a)(6), the legislative history, and the relevant administrative code provisions, the Court concludes that the loan does not violate § 50(a)(6)(L) and that summary judgment should be granted in favor of Defendants on this issue. Section 50(a)(6)(O) expressly permits home equity lenders to contract for

> variable interest rates, and thus 50(a)(6)(L) must be read in harmony with this provision. The administrative agencies charged with interpreting §§ 50(a)(6)(L) and (O) have harmonized these provisions consistent with their plain language and with the legislative history.

*Id.* at 11–12.

The McCallums do not attempt to distinguish their case from *Cerda* whatsoever in their response. *See* Pl. Response, at 4–5. Rather, they focus on the issue of balloon payments, arguing that "on its face, the note calls for the payment of a balloon, under the relevant definition of the term."[4] *Id.* at 5. The McCallums are apparently basing this on the fact that the *interest* rate can fluctuate from 6.125 to 12.125 percent. *See id.* This argument is clearly incorrect—a balloon is an *installment* that is more than an amount equal to twice the average of all installments scheduled before that installment, and installments include both principal and interest. Thus, the mere fact that the interest rate percentage may rise to *nearly* double its initial rate, over a period of time, does not establish that the McCallums were required to make a balloon payment. Moreover, the McCallums do not allege in their complaint, nor do they offer any evidence in their response, that they were ever required to make a balloon payment. Accordingly, the Court will grant summary judgment on this issue as well.

### III. CONCLUSION

In light of the foregoing, the Court will grant summary judgment in favor of Defendant. Plaintiffs are not entitled to a declaratory judgment declaring that the extension of credit violated sections 50(a)(6)(E) or (L) of the Texas Constitution, nor are they entitled to any corresponding consequential relief.

---

[4] Balloon--an installment that is more than an amount equal to twice the average of all installments scheduled before that installment. 7 TEX. ADMIN. CODE § 153.1(1) (2004).

Accordingly, IT IS ORDERED that Defendant's Motion for Summary Judgment (Clerk's Doc. No. 35) is GRANTED.

Further, because this order disposes of all of Plaintiffs' claims, the Court will enter a separate judgment in this case that Plaintiffs take nothing. The trial scheduled for October 5, 2009 is accordingly canceled.

SIGNED this 29th day of September, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE